## No. 1092.

### R. P. GLEN VS. A. G. BREARD ET AL.

The enumeration of the various works of public utility and advantage, for which corporations were authorized in Section 683, Revised Statutes, was exemplary and not exhaustive, and all similar and analogous enterprises were covered by the concluding words, "and generally all works of public utility and advantage."

The business of establishing a wharfboat and a steam elevator at the river bank of the port of Monroe, for the convenience of river carriers and of all shippers and receivers of freight, and of carrying on, through such instrumentalities, a receiving, forwarding and storage business, falls within the purview of the law.

The members of such a corporation are not liable to be sued, as individuals, for the corporate debts.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

*Robert Ray* and *D. C. Morgan* for Plaintiff and Appellant:

1. Corporations, unauthorized by law, have no standing in court except in the individual names of all the members who compose it. C. C. 446; 33 An. 635.

2. Dealing with a corporation unauthorized by law does not estop the party from denying its corporate existence. 29 An. 371; 16 An. 153.

3. When an exception is pleaded, that all the members of the firm are not made parties, the party making the exception must set out all the members who compose it. 4 L. 106.

*Franklin Garrett* and *Boatner & Boatner* for Defendants and Appellees:

1. "The rule of law is, that during the existence of the partnership suit must be brought against the firm and not against individual partners." Key vs. Box, 14 An. 497.

2. "Suits against chartered companies must be brought against them under their legal titles." C. P. 119.

3. Plaintiff having contracted with a corporation, as such, in a suit on the contract, both parties are estopped to deny the existence or the legal validity of such corporation. 101 U. S. (xi O.) 392-7; 94 U. S. (iv O.) 22, 680; 33 An. 1448-9.

4. A corporation can be legally formed in Louisiana: to effect insurance to construct, own, or lease, and maintain docks, wharves, wharfboats, steam elevators, drays, floats, and other vehicles for the transportation of freight. R. S. 683; Charter "Monroe W. and E. Co." Art. 2.

The opinion of the Court was delivered by

FENNER, J. The "Monroe Wharfboat & Elevator Co." was regularly incorporated under Sections 683 *et seq.* of the Revised Statutes. Its act of incorporation was duly recorded. It elected officers, as provided in the act, and conducted its business in its corporate name and through its said officers.

It bought a wharfboat from plaintiff, partly for cash and partly for notes, the latter being signed by the president of the corporation and sealed with its seal.

Three of these notes not having been paid at maturity, the plaintiff,

selecting the six stockholders who signed the original act of incorporation, brings this suit against them individually as commercial partners, alleging, in substance, that the corporation had no legal existence, because unauthorized by law, and was therefore a mere private trading company engaged in mercantile business, the members of which were liable individually and *in solido.*

To the petition defendants interposed the following exceptions, among others : 1st, that the "Monroe Wharfboat & Elevator Co." is a legally constituted corporation and can only be sued through its designated officers ; and 2d, that having contracted with the corporation as such, plaintiff is estopped from denying its corporate existence.

The exceptions were sustained and the plaintiff appeals.

Much reflection upon the objections urged by the learned counsel of plaintiff to the corporate capacity of the contracting company fails to convince us of their soundness.

The Act of 1855, reproduced in Sections 683 *et seq.* Rev. Statutes, was entitled "An Act for the organization of corporations for works of public improvement and utility." The law authorized the constitution of corporations for various enumerated purposes, and concludes with the words: "and generally all works of public utility and advantage."

Clearly the enumeration was not intended to be exhaustive, but merely to indicate, by various examples, what the law-maker considered to be "works of public utility and advantage." All similar or analogous works or enterprises were manifestly covered by the concluding general expression.

Amongst other examples enumerated in the Act we find the following: "for the construction and maintenance of railroads, *bridges, ferries,* and other works of public improvement; to effect insurance; to construct and maintain dry-docks or floating docks for the building or repairing of ships or other vessels; to construct and carry on works to compress cotton; to construct and maintain docks, steamships and other vehicles for the transportation of freight and passengers."

It thus appears that enterprises having for their purpose the improvement of the convenience and facilities of intercourse and of handling, transferring and transporting commodities, figure conspicuously among the "works of public utility and advantage" contemplated by the legislator.

Turning now to the charter of this company, in order to ascertain the purposes of its organization, we find them declared therein as follows: "to do a general receiving, storage, transfer and forwarding business, and for the accomplishment of these objects, to own or lease and main-

tain one or more wharf boats on either bank of the Ouachita River, at Monroe, for the use and convenience of steamboats and other water-craft landing for the discharge or lading of cargoes,  *  *  to store freight or other lading for watercraft,  *  *  and to take insurance risks on such freights or other landing ; to construct docks or wharves on the Ouachita River front  *  *  ; to construct and own or lease and maintain a steam elevator or elevators on either bank ; to purchase or lease suitable grounds  *  *  and to erect thereon warehouses for the reception and storage of every description of produce or goods that enters into commerce, etc."

We cannot agree with plaintiff's counsel that the purpose of this incorporation is merely to do a receiving, forwarding and warehouse business in a general sense. The whole article is to be taken together, and it clearly discloses the purpose to be the establishment and main-tenance of a wharf boat and a steam elevator and warehouses and other appliances and accessories mentioned, with the object of facilitating the transfer of freight, and promoting the convenience of river carriers and of all shippers and receivers of freights at the port of Monroe. This is certainly as much a "work of public utility and advantage" as the maintenance of bridges, ferries, docks, vehicles for the transpor-tation of freight and passengers, cotton presses, and other examples enumerated in the law.

The very name of the company indicates it object, and the evidence establishes that, for the carrying out thereof, it did maintain a wharf-boat and did build a steam elevator with a railway from the top of the river bank to low water line, by means of which its business was car-ried on. It was after the destruction of its first wharf boat by fire that, in order to replace the same, the company purchased the boat of plain-tiff, for a part of the price of which this suit is brought.

The argument against the policy of allowing corporations for such purposes, as encroaching on the domain of private enterprise, addresses the legislative, not the judicial ear. Our function is to recognize and enforce the policy actually adopted by the legislature, and we are satisfied that this corporation was organized in perfect consonance therewith.

The evidence does not establish that the company has engaged in the mercantile business of buying and selling goods forbidden by the statute. But if it were true that it had so abused its privileges, and contravened the prohibition of the law, this might furnish ground for forfeiture on proper proceedings, but could not avail plaintiff in the present action.

This relieves us from considering the question of estoppel as to which

existing jurisprudence seems to be in a confused and contradictory condition. See Workingmen's vs. Converse, 29 An. 369; Citizens' vs. Latiolas, 33 An. 1448.

Plaintiff's demand is surely wanting in equity, because he seeks to impose upon defendants a liability which they certainly never intended to incur, and which, from the circumstances of his contract, it is apparent he did not expect or believe to exist.

Judgment affirmed.